### TOWN OF NORTH HEMPSTEAD v. GREGORY et al.

(Supreme Court, Appellate Division, Second Department.   July 9, 1900.)

1. JUDICIAL NOTICE—WHARVES—CONSTRUCTION.

Where defendants appealed from a judgment that a wharf built by them was a greater burden on the land than they were entitled to as riparian owners, judicial notice will not be taken of the fact that a wharf built in a certain bay must have stone or other heavy material filled in around the piles in order to resist the action of the ice in tide waters.

2. SAME—BURDEN ON LAND.

Where defendants appealed from a judgment that a wharf built by them was a greater burden on the land than they were entitled to as riparian owners, judicial notice will not be taken of the fact that a wharf built of piles is as great a burden on the land over which it is erected as one solidly built by filling stone or other heavy material in around the piles.

3. SAME—CUSTOM—VESSELS AT ANCHOR.

Where a cause was submitted to a referee on an agreed statement of facts, who found that a wharf built by defendants was a greater burden on the land than they were entitled to as riparian owners, the court on appeal will not take judicial notice that vessels commonly lie aground at low water in shallow harbors, not only alongside wharves, but at anchor; since defendant ought to have included such facts in the agreed statement.

Appeal from judgment on report of referee.

Action of ejectment by the town of North Hempstead against Charles H. Gregory and others for certain lands under water below high-water mark.   From a judgment that the plaintiff was the owner of the land, and that a wharf built on it by defendants was a greater burden than they were entitled to as riparian owners, both plaintiff and defendants appeal.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

M. Linn Bruce, for plaintiff appellant.

Edwin G. Davis, for defendant appellants.

JENKS, J.   The judgment should be affirmed upon the opinion of the referee.   No further expression is needed, save upon a question first raised upon this appeal.   There are cross appeals in an action for ejectment from certain lands under water below high-water mark, on the westerly side of Manhasset Bay, in the county of Nassau, over which the defendants have entered to build and to main-

tain a dock or wharf. The case was submitted upon agreed facts, and the referee decides that the plaintiff is the owner of the land; that the defendants are the owners of the adjacent upland, and are in possession thereof; and that the latter property and possession, from 1890 to 1898, were in Matthew Gregory, who, dying, left in succession therein his sons and his widow, the defendants. . It is adjudged that the plaintiff is entitled to immediate possession, subject, however, to the said defendants' easement for access and egress to and from the adjacent uplands and the navigable channel of the bay. The property rights of defendants are thus defined in Saunders v. Railroad Co., 144 N. Y. 75, 38 N. E. 992, 26 L. R. A. 378:

"The right of access to the channel or navigable part of the river for navigation, fishing, and such other uses as commonly belong to riparian ownership, the right to make a landing wharf or pier for his own use or for that of the public, with the right of passage to and from the same with reasonable safety and convenience."

The referee found that Matthew Gregory was engaged in the business of wrecking, dismantling, and transforming steamers, ships, and other wooden and iron vessels; that in the conduct of said business the said Matthew Gregory & Sons, during or about the year 1894, erected upon the lands a wharf or dock, which extends from the high-water mark out upon the lands under the waters of the said Manhasset Bay 291 feet, and of a uniform width of 34 feet; that about 250 feet of said dock extends into the said bay beyond low-water mark, and is a solid structure, made by driving piles and sinking scows and other boats in the waters of said bay and upon the lands above described, and filling in the same and the spaces between them with stone, earth, and other materials; that in the conduct of said business steamers, ships, and other vessels are moored to said dock, and there dismantled, repaired, and transformed; that at low water the said vessels ground beside said dock; that the said dock has ever since remained and still remains on said premises, and is now in the possession of the defendants herein, and used by them for the same purposes and in the same manner above described, and with intent, if they so desire, to use said dock for ordinary commercial purposes. This finding is within the facts of the stipulation. The learned referee decided "that the use and occupation which the defendants are making of the land above described involves an exclusive appropriation of the land itself, and the exclusion therefrom of the plaintiff, the real owner." The defendants contend that the conclusion was error, in that it was not agreed or pretended that the wharf, in dimensions or structure, is improper. An agreement of fact that the wharf is improper was not to be expected, but a conclusion of the referee that it is improper is a fair inference from the settled facts.

It is insisted that we can and should take judicial notice of certain facts that must prevail. I need not discuss those parts of the doctrine of judicial notice that are based upon statutes, or the procedure of the courts, or the like. So far as the doctrine applies here and in similar cases, it must be based upon some principle that dispenses with proof offered in the particular case. In resolving such

questions, the judges have recognized that the criterion is the maxim, "What is known need not be proved;" and, beginning with Starkie, who, as Thayer notes, first took special notice of the subject, the text writers, such as Phillips, Greenleaf, Stephen, Rice, and Burr-Jones, are in accord. Thus, Swayne, J., in Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200, says: "Facts of universal notoriety need not be proved." Comstock, J., in Wynehamer v. People, 13 N. Y. 378, says: "We must be allowed to know what is known by all persons of common intelligence." Daniels, J., in speaking of the Pulteney title, in People v. Snyder, 41 N. Y. 397, says: "Its early history is a matter of general notoriety and interest throughout the state, and, in fact, of the United States, and for that reason should be judicially noticed." Allen, J., in Howard v. Moot, 64 N. Y. 263, says: "Courts will take notice of whatever ought to be generally known within the limits of their jurisdiction, and that notice should be taken of the present Indian occupancy of the state, as 'it is a matter of notoriety.'" Folger, J., in Wood v. Insurance Co., 46 N. Y. 421, says: "The matters of which judicial notice may be taken are those which must have happened according to the constant and invariable course of nature, or are of such general and public notoriety that every one may fairly be presumed to be acquainted with them." The expression of Brown, J., in Hunter v. Railroad Co., 116 N. Y. 615, 621, 23 N. E. 10, 6 L. R. A. 246, is that notice may be taken of facts "which are generally known." And, as the common knowledge of man ranges far and wide, so the doctrine embraces matters so curiously diverse as, e. g., the rising of the sun, the status of the Isle of Cuba, the late Civil War, the contents of the Bible, the character of a camp meeting, the height of the human frame, the fable of "the frozen snake," the characteristics and construction of the ice-cream freezer, the general use of the diamond stack or the straight stack spark arrester, the habits of those who shave; in fine, "all things, both great and small." Case v. Porew, 46 Hun, 57; People v. D'Argencour, 32 Hun, 178; Swinnerton v. Insurance Co., 37 N. Y. 174; State v. School Dist., 76 Wis. 177, 44 N. W. 967; Hunter v. Railroad Co., supra; Brown v. Piper, supra; Hoare v. Silverlock, 12 Q. B. 624; Frace v. Railroad Co., 143 N. Y. 182, 187, 38 N. E. 102; Petit v. Minnesota, 177 U. S. 164, 20 Sup. Ct. 666, Adv. S. U. S. 164, 44 L. Ed. ——. There are matters beyond doubt, and over which no court would hesitate, even if long lines of precedents did not preclude dissent. And there are other matters of which common knowledge is not taken for granted, so that whether judicial notice shall be taken of them is an open question; and thus, in an instance thereof, one court may apply, and another reject, the doctrine. For the determination whether such a fact be "notorious" obviously depends upon the particular view, the judicial knowledge, or the judicial reasoning of the court as to the common knowledge of man thereof. In Brown v. Piper, supra, the court said: "In fine, the courts will take notice of what ought to be known within their jurisdiction." But in United States v. Rio Grande Dam & Irr. Co., 174 U. S. 697, 19 Sup. Ct. 770, 43 L. Ed. 1136, Brewer, J., speaking of the foregoing, said: "While this will be undoubtedly accepted as an accurate statement of the law,

it is obvious that there might be, and in fact there is, much difficulty in determining what ought to be generally known; so that the application of this rule has, as might be expected, led to some conflict in the authorities." In Brown v. Piper, supra, the court further say: "This power is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative." We are asked, then, in this case, to take judicial notice—First, that a wharf, to resist the action of ice in tide waters, such as Manhasset Bay, must be so constructed that it may be filled in with stone or other heavy material, and that a wharf built on piles alone will not withstand the action of the ice. The very statement of the proposition almost carries refutation. If this court should decide to consider the question of judicial notice at all, then, sustained by respectable precedents, the appellants might insist that such notice be taken of Long Island Sound. They might urge that such a notice might embrace the fact that in the severest winter ice forms or floats therein, and they might argue that such notice might extend to the fact that piers of bridges are constructed to resist the attacks of ice; but they would fail to find authority of maxim or of decision for their assertion that judicial notice should be taken of so minor a matter as that a wharf or pier cannot be built in Manhasset Bay on any piles sufficient to resist the ice that may form or float in its waters; for common knowledge of that neighborhood is not to be expected. The facts must be of greater uniformity, and common to a broader territory. Buffalo Pipe-Line Co. v. New York & L. E. R. Co., 10 Abb. N. C. 107; George v. Cemetery, 32 App. Div. 301, 52 N. Y. Supp. 1097; Porter v. Waring, 69 N. Y. 250; McKinnon v. Bliss, 21 N. Y. 206; Bradford v. Floyd, 80 Mo. 207. Undoubtedly, there is abundant authority for the proposition that the actual knowledge of the court is not the test, but that the court may inform itself (Taylor v. Barclay, 2 Sim. 213; Hoyt v. Russell, 117 U. S. 401, 6 Sup. Ct. 881, 29 L. Ed. 914; Walton v. Stafford, 14 App. Div. 310, 43 N. Y. Supp. 1049); but this, I think, rests on the theory that the court is ignorant of a fact which, being commonly known, is the subject of judicial notice, not that judicial notice is acquired because the court, through investigation, learns a particular fact. And so it is held that judicial notice would not be taken of facts in dictionaries or encyclopedias, unless those facts are, after all, within the common knowledge of man. Engraving Co. v. Hoke (C. C.) 30 Fed. 444. Whether a wharf built on piles in Manhasset Bay would withstand the action of ice would seem to depend upon the possibilities of foundation, the strength of the piles, and the character of the ice that may freeze or be forced against them. And these things, if relevant, should have been proved in this case. But, even if the proposition of the defendants be sound, it is not enough. Before it will avail them, the court must go further to take judicial notice that a bridge or pier in such a locality cannot be built in any other manner than by "driving piles and sinking scows or other boats, * * * and by filling the same and spaces between them with stone, earth, and other materials, thereby forming substantially a solid structure 34 feet wide and 291

feet in length, covering said lands," or in a manner similarly invading the property of the plaintiff.

And we are also asked to take judicial notice "that a wharf built upon piles is as great a burden upon the land over which it is built as is one that is solidly built. There is no conceivable use, other than that of a wharf, to which such land can contribute." If the dock or wharf is of a greater construction than is authorized by the rights of the defendants, then it does not avail the defendants whether it be built in one fashion or another. It is not necessary that there should be interference with navigation; it is sufficient that the defendants impose a burden greater than the law allows. Cullen, J., in Town of North Hempstead v. Gregory (Sup.) 66 N. Y. Supp. 28. Further, I cannot see that this proposition admits of judicial notice.

The third proposition submitted for our judicial notice is:

"That vessels commonly lie aground, not only alongside of wharves, but at anchor, at low water, in shallow harbors. That is an incident of navigation which is paramount to any fanciful right of the owner of the soil."

Assume that it were proven in the case that vessels commonly lie aground, not only alongside of wharves, but at anchor, at low water, in shallow harbors, and that the court found "that this is an incident of navigation which is paramount to any fanciful right of the owner of the soil." This would not justify the defendants, who assert, not that incidental to navigation (which is "the science or art of conducting a ship from one place to another, and which is sometimes extended to the periods when a ship is at anchor") they sometimes moor vessels or ships, but that they are engaged in a business of wrecking, dismantling, and transforming ships; for they answer:

"That some of them are engaged in the business of purchasing and selling vessels, and dismantling them and selling the proceeds, said business having been established by the said Matthew H. Gregory, who then was the owner of the uplands adjacent to the lands described in the complaint; and that, in order to conduct said business, the said Matthew H. Gregory had built a wharf on a portion of the lands described in said complaint, which extends out into Manhasset Bay a distance of about 265 feet, and has an average width of 34 feet. That it was necessary to build said wharf of such dimensions in order to procure a suitable depth of water to conduct said business."

But, above all, I see no reason why this court should here apply the doctrine of judicial notice. In Hunter v. Railroad Co., supra, the court say:

"Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends upon the nature of the subject, the issue involved, and the apparent justice of the case. The rule that permits a court to do so is of practical value in the law of appeal, where the evidence is clearly insufficient to support the judgment."

In Walton v. Stafford, supra, where the facts were admitted, as in this case, and the matter of judicial notice was first urged upon appeal, the court refused upon that ground "to inject" the fact into the case. Phillips, in his book on Evidence, states as a further principle that the matters within judicial notice are generally collateral to and unconnected with the point in issue, so that to dispense with strict proof is of no risk, while to require it might be inconvenient, by reason of expense or of difficulty. The success of the plaintiff in-

volved a prohibition of any structure not fairly within the rights of the defendants as riparian owners, as such rights are defined in Saunders v. Railroad Co., supra. The defendants were thus apprised that these matters now urged for our judicial notice might be direct and vital. They might have refused to stipulate upon the facts, and have sought to offer proof of the necessity of the present structure within their riparian rights. Then the plaintiff might have offered counter proof. This the defendants did not attempt to do, and we should, therefore, be reluctant now to disturb the judgment by taking judicial notice of any of these things, even though they admitted the doctrine beyond all cavil. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.